IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Three Pennsylvania Skill       :
Amusement Devices, One Green     :
Bank Bag Containing $525.00 in      :   No. 707 C.D. 2023
U.S. Currency, and Seven Receipts   :   Argued: October 11, 2023
                                 :
Appeal of: Commonwealth of        :
Pennsylvania                       :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE DUMAS                    FILED:  November 30, 2023

The Office of the Attorney General of the Commonwealth of Pennsylvania (the Commonwealth) appeals from the order entered in the Court of Common Pleas of Dauphin County (trial court) on March 23, 2023, granting the petition for return of property filed by Capital Vending Company, Inc. (Capital Vending) and Champions Sports Bar, LLC (Champions Bar) (collectively, Appellees).  After careful review, we affirm.

## I. BACKGROUND[1]

On December 9, 2019, agents of the Pennsylvania State Police, Bureau of Liquor Control Enforcement (BLCE), seized three amusement devices (POM

---

[1] We base the statement of facts on the trial court's opinion, which is supported by the record.  *See* Trial Ct. Op., 3/23/23, at 1-2.

machines),[2] a green bag containing $525.00 in currency, and seven receipts from Champions Bar.  According to BLCE, the POM machines were gambling devices *per se*, and the $525.00 and receipts were derivative contraband.

The POM machines have a single game with multiple themes. Gameplay commences when a player inserts money into the machine.  The money is converted into points/credits,[3] with $1 equaling 100 points.  Following completion of gameplay, the player may redeem any remaining credits by pressing the "redeem" button, which generates a ticket that the player can exchange for currency.  The player can decide how many points to commit to a play, from 8 to 400 points, and can preview the upcoming puzzle before committing the points.  The first phase of the game is a "tic-tac-toe" type puzzle with nine symbols arranged in rows of three. The object of the game is for the player to match three similar symbols in a row on as many pay lines as possible, arranged horizontally, vertically, and/or diagonally.

There are three outcomes: (1) the puzzle can be solved, resulting in an award equal to 105% of the committed points (a win); (2) the puzzle can be solved, resulting in an award less than 105% of the committed points (a hit); and (3) the puzzle cannot be solved (a loss).  After a hit or loss, the player is offered an opportunity to recoup lost points with the "Follow Me" feature.  During the "Follow Me" portion of the game, the player tries to repeat a pattern of multiple, multi-colored circles.  If the player repeats the pattern correctly, the game restores the points lost, plus an additional five percent.

---

[2] The devices are electronic games developed by Pace-O-Matic, Inc.  Notes of Testimony (N.T.), 11/22/22, at 305.  Generally, these games have a "reel" or "tic tac toe" puzzle phase, as well as a secondary memory skill game in which the player can win back any money lost during the puzzle phase. *See id.* at 305-20.  The devices at issue were supplied to Champions Bar by Capital Vending.

[3] The trial court uses both terms interchangeably.

No criminal charges were filed related to the seizure, but the Commonwealth issued Champions Bar an administrative citation for permitting gambling. Appellees filed a petition for return of property pursuant to 42 Pa.C.S. § 5806 and Pennsylvania Rule of Criminal Procedure 588, Pa.R.Crim.P. 588, arguing that the POM machines are not gambling devices *per se* but are predominantly games of skill.

The trial court held evidentiary hearings after which the trial court invited the parties to submit proposed findings of fact and conclusions of law. On March 23, 2023, the trial court issued an opinion and order granting Appellees' petition for return of property. The trial court further ordered the Commonwealth to return the seized property within five days. The Commonwealth timely appealed to the Superior Court of Pennsylvania, which transferred the matter to this Court.

## II. ISSUES

The Commonwealth raises two issues for our review. First, the Commonwealth contends that the POM machines are "slot machines," which are prohibited under the Crimes Code, 18 Pa.C.S. § 5513(a). Second, the Commonwealth argues that the POM machines are gambling devices *per se*.[4]

---

[4] The Commonwealth purports to raise a third issue, namely, that the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. §§ 1101-1904, provides a sufficient basis for seizure of the POM machines. *See* Commonwealth's Br. at 37. We have rejected this exact argument previously and decline to revisit it. *See POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717, 735 (Pa. Cmwlth. 2019) (*en banc*) (*POM*). Further, this argument was not raised before the trial court and is waived. *See* Pa.R.A.P. 302(a) (issues not raised before the trial court may not be raised for the first time on appeal).

3

## III. DISCUSSION[5]

### A. Introduction

### 1. Section 5513 of the Crimes Code

In this case, the parties dispute the proper interpretation of Section 5513 of the Crimes Code, which was relied upon by BLCE in seizing the POM machines. A person is guilty of a first-degree misdemeanor if he "intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards." 18 Pa.C.S. § 5513(a). Electronic versions of these devices that offer simulated gambling programs are also prohibited. *See* 18 Pa.C.S. § 5513(a.1). Any gambling device that is used in violation of the provisions of the statute shall be seized and forfeited to the Commonwealth. 18 Pa.C.S. § 5513(b).

---

[5] "Our review on this appeal [from a motion to return property] is limited to examining whether the trial court's factual determinations were supported by [substantial] evidence and whether the trial court abused its discretion or committed an error of law." *Commonwealth v. Morelli*, 55 A.3d 177, 179 (Pa. Cmwlth. 2012). The trial court as a factfinder is "the ultimate judge of credibility and resolves all conflicts in the evidence." *See Lodge v. Robinson Twp. Zoning Hr'g Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022). As with any other witness, the factfinder "is free to accept or reject the credibility of expert witnesses, and to believe all, part, or none of the evidence." *City of Phila., Bd. of Pensions & Ret. v. Clayton*, 987 A.2d 1255, 1262 (Pa. Cmwlth. 2009). As long as sufficient evidence exists in the record, "which is adequate to support the [factfinder's] determination, an appellate court is precluded from overturning these determinations." *See id.* "On a motion for return of property, it is the movant's burden to establish by a preponderance of the evidence that he is entitled to lawful possession of the property at issue." *Morelli*, 55 A.3d at 180.

## 2. Forfeiture Proceedings in General

Anyone aggrieved by the seizure of property may move for the return of the property by motion. 42 Pa.C.S. § 5806(a)(1); *see also* Pa.R.Crim.P. 588(A). If the motion is granted, "the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited." Pa.R.Crim.P. 588(B).

"[T]he moving party must establish by a preponderance of the evidence entitlement to lawful possession. Once that is established, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property." *Singleton v. Johnson*, 929 A.2d 1224, 1227 (Pa. Cmwlth. 2007). A claim can be defeated if an opposing party can establish that it is entitled to lawful possession of the property or if the Commonwealth can establish that the property is contraband. *See id.* at 1227 (citing *Commonwealth v. Crespo*, 884 A.2d 960 (Pa. Cmwlth. 2005)). "If the Commonwealth seeks to defeat the claim, it bears the burden to prove, by a preponderance of the evidence, that the items are either 'contraband *per se*' or 'derivative contraband,' and therefore should not be returned to the moving party." *Commonwealth v. Trainer*, 287 A.3d 960, 964 (Pa. Cmwlth. 2022).

"To meet its burden to defeat the motion for return of property, the Commonwealth must make out more than simply demonstrating that the property was in the possession of someone who has engaged in criminal conduct. It must establish a specific nexus between the property and the criminal activity." *Singleton*, 929 A.2d at 1227 (citations omitted). "When the Commonwealth sustains that burden, the burden of proof shifts to the property owner to disprove the Commonwealth's evidence or establish statutory defenses to avoid forfeiture." *See*

*id.* (citing *Commonwealth v. 1992 Chevrolet*, 844 A.2d 583, 585 (Pa. Cmwlth. 2004)).

### B. Whether the POM Machines are Slot Machines[6]

### 1. The Parties' Arguments

The Commonwealth contends that there are four distinct categories of devices prohibited under the Crimes Code: punch cards, drawing cards, slot machines, and "any device to be used for gambling purposes." Commonwealth's Br. at 15 (citing 18 Pa.C.S. § 5513(a)(1)). According to the Commonwealth, the first three are inherently gambling devices and *per se* illegal. *Id.* The final category, the Commonwealth suggests, is a catch-all category that requires proof of use because it may include objects that are not inherently created for gambling purposes. *Id.*

Within this framework, the Commonwealth asserts that the seized POM machines are plainly slot machines and, thus, illegal. *See id.* at 17-24. Noting that the Crimes Code has not defined the term "slot machine," the Commonwealth relies

---

[6] Prior to discussing the merits of this issue, we first address the trial court's assertion that the Commonwealth did not preserve this claim because it was not included in the Commonwealth's answer to the petition for return of property or the Commonwealth's counterclaim for forfeiture of property. *See* Trial Ct. Op. at 4 n.2. The trial court observed that the first time the Commonwealth brought the claim was in its post-hearing submission. In response, the Commonwealth states that its answer to the return of property petition stated that the seizure was premised on a violation of 18 Pa.C.S. § 5513 and that throughout the answer, the Commonwealth relied on both the fact that the machines were slot machines and that they were games of chance and, thus, devices used for gambling purposes. *See* Commonwealth's Br. at 24. An examination of the Commonwealth's answer reveals that the Commonwealth did not clearly state this issue in a manner that would have alerted the trial court and Appellees of its argument and, accordingly, risks waiver. *See* Pa.R.A.P. 302(a). However, because the answer does repeatedly discuss "simulated slot machine games," we hold this is sufficient preservation of the issue for purposes of our appellate review, and we will address the merits of the Commonwealth's argument.

6

on a standard dictionary definition but further directs our attention to a definition provided in the Gaming Act. *See id.* at 17-18.

According to the Commonwealth, it is appropriate to read the Crimes Code *in pari materia* with the Gaming Act because these acts "necessarily go hand-in-hand" and because the Gaming Act serves as a limited legislative exception to conduct otherwise deemed illegal. *See id.* 18-20. Thus, the Commonwealth argues, the definition of a slot machine under the Crimes Code must be the same as, or perhaps even broader than, the Gaming Act definition. According to the Commonwealth, a narrow definition of "slot machine" would undermine the "primary objective" of the General Assembly "to protect the public through regulation and policing of all activities involving gaming and practices that continue to be unlawful. *Id.* at 21 (quoting 4 Pa.C.S. § 1102(1)).

For these reasons, the Commonwealth urges that the POM machines are subject to seizure and forfeiture under 18 Pa.C.S. § 5513(b).

In response, Appellees reject the Commonwealth's interpretation of Section 5513(a). *See* Appellees' Br. at 35. According to Appellees, the statute does not proscribe slot machines in the abstract but only those slot machines manufactured or sold for gambling purposes. *See id.* at 35-38. Nevertheless, Appellees maintain that the POM machines are not slot machines under the Crimes Code, because they are games of skill with an additional "Follow Me" feature absent from slot machines. *See id.* at 61, 70. Further, Appellees contend that it is inappropriate to consider any principles of statutory interpretation because the Commonwealth has not alleged an ambiguity in the statute. *See id.* at 44-47. Finally, Appellees assert that it is inappropriate to read the Crimes Code and Gaming Act *in pari materia*, because they relate to different classes of things: the Crimes Code is

7

concerned with illegal gambling, while the Gaming Act regulates licensed, legal gambling. *See id.* at 47-48.

### 2. The POM Machines are not Slot Machines

"The touchstone of interpreting statutory language is to ascertain and effectuate the intent of the legislature." *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 196 (Pa. Cmwlth. 2015); 1 Pa.C.S. § 1921(a). It is a "guiding principle of statutory construction that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Summit Sch., Inc.*, 108 A.3d at 196; 1 Pa.C.S. § 1921(b).

"Words and phrases shall be construed . . . according to their common and approved usage." 1 Pa.C.S. § 1903(a). "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Givner)*, 39 A.3d 287, 290 (Pa. 2012).

If a statute is unclear or ambiguous, then the courts may apply further principles of statutory construction to ascertain the intent of the legislature. *Summit Sch., Inc.*, 108 A.3d at 197; *see, e.g.*, 1 Pa.C.S. §§ 1921(c) (enumerating further considerations), 1922(1) (presuming, *inter alia*, that the legislature does not intend a result that is absurd), 1932 (providing that statutes relating to the same things or class of things, *i.e.*, *in pari materia*, "shall be construed together . . . as one statute"). A statute is ambiguous if there are two or more reasonable interpretations of the statutory language. *Herold v. Univ. of Pittsburgh - of Commonwealth Sys. of Higher Educ.*, 291 A.3d 489, 501 (Pa. Cmwlth. 2023), *appeal granted*, (Pa. No. 94 WAL 2023, filed Oct. 13, 2023).

Statutes are *in pari materia* "when they relate to the same persons or things or to the same class of persons or things." *See* 1 Pa.C.S. § 1932(a). However, "the rule requiring statutes *in pari materia* to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and [it] cannot be invoked where the language of a statute is clear and unambiguous." *Goodwin v. Goodwin*, 280 A.3d 937, 948 n.7 (Pa. 2022) (citing *In re McFarland's Est.*, 105 A.2d 92, 95-96 (Pa. 1954)).

Additionally, we note that there is a statutory mandate that penal statutes "shall be strictly construed." *See Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009); *see also* 1 Pa.C.S. § 1928(b)(1). This does not override the "general principle that the words of a statute must be construed according to their common and approved usage and does not require this Court to give the words of a penal statute their "narrowest possible meaning." *See McCoy*, 962 A.2d at 1168 (cleaned up). However, where there is ambiguity in the language of a statute, it should be interpreted in "the light most favorable to the accused." *See id*.

With these principles in mind, we readily reject the Commonwealth's arguments. The Crimes Code does not define "slot machine" or the other specific categories of proscribed devices.[7] However, a slot machine is commonly construed as a "coin-operated gambling machine that pays off according to the matching of symbols on wheels spun by a handle." *See* https://www.merriam-webster.com/dictionary/slot%20machine (last visited Nov. 29, 2023). Although

---

[7] Section 5513 does provide definitions for other, related terms, *e.g.*, "consideration associated with a related product, service, or activity," "electronic video monitor," and "simulated gambling program." 18 Pa.C.S. § 5513(f).

originally a mechanical device, the definition includes "electronic version[s] of the machine." *Id.*[8]

This definition does not adequately describe the POM machines. While the first stage in gameplay may be analogous to the experience that a slot machine offers, the POM machines also integrate a memory game into the overall gameplay experience that requires a player to focus on a sequence of multicolored shapes and then recall the sequence correctly. *See*, *e.g.*, N.T. at 305-20. This additional feature of the POM machines distinguishes them from the common definition of a slot machine. *Cf.* https://www.merriam-webster.com/dictionary/slot%20machine (last visited Nov. 29, 2023); https://www.britannica.com/dictionary/slot-machine (last visited Nov. 29, 2023); https://www.thefreedictionary.com/slot+machine (last visited Nov. 29, 2023).

We further reject the Commonwealth's assertion that the Crimes Code must be read *in pari materia* with the Gaming Act, thus importing its broad definition of "slot machine" in order to give effect to the General Assembly's objective in the Gaming Act of protecting the public. Such an interpretation is inappropriate. Statutes are *in pari materia* "when they relate to the same persons or things or to the same class of persons or things." *See* 1 Pa.C.S. § 1932(a). Here, the statutes do not

---

[8] Here, we rely on the dictionary definition provided by the Commonwealth. *See* Commonwealth's Br. at 17-18. It is unclear from the Commonwealth's brief what edition or version of the Merriam-Webster Dictionary the Commonwealth cites here. However, the definition is identical to that provided on Merriam-Webster's website. https://www.merriam-webster.com/dictionary/slot%20machine (last visited Nov. 29, 2023). Appellees have provided additional dictionary definitions, including the Britannica Dictionary (defining slot machine as "a machine used for gambling that starts when you put coins into it and pull the handle or press a button") and the Free Dictionary (defining "slot machine" as "a gambling machine operated by inserting coins into a slot and often by pulling down on a long handle."). *See* Appellees' Br. at 46 (citing https://www.britannica.com/dictionary/slot-machine (last visited Nov. 29, 2023) and https://www.thefreedictionary.com/slot+machine (last visited Nov. 29, 2023)).

relate to the same class of things: the Crimes Code regulates illegal gambling devices, and the Gaming Act regulates licensed gambling in the Commonwealth.

Additionally, the rule requiring *in pari materia* statutory construction applies only in instances of ambiguous statutory language. *See Goodwin*, 280 A.3d at 948 n.7. The Commonwealth does not allege that Section 5513 is ambiguous, nor do we discern any ambiguity therein. *See* Commonwealth's Br. at 18-24. Thus, we decline to employ this principle of statutory construction.[9] *See Goodwin*, 280 A.3d at 948 n.7; *In re McFarland's Est.*, 105 A.2d at 95-96. Further, even if there did exist an ambiguity, the Crimes Code is a penal statute that should be construed strictly, and any ambiguities resolved in favor of the accused. *See*, *e.g.*, *McCoy*, 962 A.2d at 1168.

In summary, the POM machines are not slot machines as commonly defined, and we decline to import a broad definition used to regulate legal gambling into this criminal statute. *See Goodwin*, 280 A.3d at 948 n.7; *In re McFarland's Est.*, 105 A.2d at 95-96; *see also Pinnacle Amusement, LLC v. Bureau of Liquor Control Enf't*, 298 A.3d 447, 452 (Pa. Cmwlth. 2023), *reargument denied* (Aug. 21, 2023).

---

[9] The Commonwealth also relies upon *Commonwealth v. Dent*, 992 A.2d 190 (Pa. Super. 2010), to argue that we should read the Crimes Code and Gaming Act *in pari materia*. In *Dent*, the Superior Court was asked to determine whether the playing of Texas Hold 'Em poker, in an unlicensed garage, constituted unlawful gambling under the Crimes Code. *See id.* at 192. The Superior Court looked to the Gaming Act for the definition of "unlawful gambling" and determined that there would be no reason for the legislature to authorize the playing of poker in certain facilities if playing did not constitute unlawful gambling prior to that authorization. *See id.* We may rely on Superior Court decisions as persuasive authority where they address analogous issues, but they are not binding precedent. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018). In our view, *Dent* is unpersuasive on this point, particularly in light of this Court's decision in *POM*, which declined to apply the Gaming Act to POM games similar to those at issue here and held that the Gaming Act is *solely* intended to regulate licensed gambling and not to supplant the Crimes Code. *POM*, 221 A.3d at 735.

11

Finally, as noted, the parties also dispute the proper interpretation of the phrase "to be used for gambling purposes." The Commonwealth asserts that it modifies only the catch-all category in Section 5513(a), whereas Appellees suggest it necessarily modifies each category. In light of our conclusion that the POM machines are not slot machines under the Crimes Code, we need not resolve this further dispute of the parties. Regardless of which interpretation is proper, because the POM machines are not slot machines, the POM machines are not illegal *per se*.

## C. Whether the POM Machines are Gambling Devices *Per Se*

In forfeiture proceedings, if an item is not *per se* illegal, it may be considered derivative contraband, or "property innocent by itself, but used in the perpetration of an unlawful act." *See Commonwealth v. Irland*, 153 A.3d 469, 473 (Pa. Cmwlth. 2017), *aff'd*, 193 A.3d 370 (Pa. 2018). Essentially, the Commonwealth must establish a specific nexus between the property and alleged criminal activity. *Pinnacle*, 298 A.3d at 450-41 (citing *Irland*, 153 A.3d at 473).

Here, we consider the POM machines under the catch-all category defined at Section 5513(a) of the Crimes Code. Thus, we must determine whether they are devices "used for gambling purposes." *See* 18 Pa.C.S. § 5513(a). In other words, in order for the Commonwealth to prove that the POM machines are derivative contraband, it must establish a specific nexus between the POM machines and illegal gambling. *See Irland*, 153 A.3d at 473; *Pinnacle*, 298 A.3d at 450-51.

### 1. The Parties' Arguments

The Commonwealth contends that the seized POM machines are devices "used for gambling purposes" and thus prohibited under Section 5513(a) of the Crimes Code. *See* Commonwealth's Br. at 25. According to the Commonwealth, players use these machines to obtain a result determined by chance,

and any element of skill "tacked on to the game is *de minimus* [sic]." *See id.* The Commonwealth points to a number of reasons in support of this assertion, including (1) the game is advertised as a slot machine; (2) the "Follow Me" feature is secondary, insignificant, and hidden by the game's designers; (3) Appellees allegedly do not track game data[10] other than the slot machine play, indicating that the "Follow Me" feature is secondary in importance; (4) "Follow Me" is so tedious and difficult that anyone interested in playing a slot machine would never play it; and (5) chance far outweighs skill when the game in its entirety is considered. *See id.* at 25-36.

Appellees reply that substantial evidence supports the trial court's legal conclusion that skill predominates over chance. *See* Appellees' Br. at 64-68. Appellees argue that the POM games are not slot machines and are not advertised as such. *See id.* at 68-72. Appellees further respond that the "Follow Me" phase is not secondary, insignificant, or hidden, and that the Commonwealth's arguments about this phase are factually untrue. *See id.* at 72-80. Further, Appellees argue that the Commonwealth produced no competent evidence that "Follow Me" is not tracked. *See id.* at 80-83. Appellees argue that this Court should ignore the Commonwealth's speculative argument regarding what a hypothetical player of the "Follow Me" feature may think or do. *See id.* at 83-87.

### 2. The Predominate Factor Test

Recently, this Court clarified the appropriate analysis in resolving whether alleged contraband constitutes a gambling device *per se*. *Pinnacle*, 298

---

[10] The Commonwealth implies that this lack of tracking data means that the "Follow Me" game is an "insignificant aspect" of the game as a whole. *See* Commonwealth's Br. at 33-34. Appellees argue that the Commonwealth did not conclusively prove, one way or another, that the game does not track "Follow Me" data. *See* Appellees' Br. at 26-27.

13

A.3d at 451-52. In *Pinnacle*, investigators from BLCE seized numerous electronic gaming machines following a cross-county investigation in liquor-licensed establishments. *Id*. at 449-50. However, following an evidentiary hearing, the trial court disagreed with BLCE's contention that the machines were gambling devices *per se* and ordered their return. *Id.* at 451. Upon further review and relying on precedent from our Supreme Court, the *Pinnacle* Court applied the predominate factor test to ascertain the nature of the alleged contraband. *Id.* at 451-52 (citing *Commonwealth v. Two Electronic Poker Game Machines*, 465 A.2d 973 (Pa. 1983)).

The fundamental inquiry in the predominate factor test is whether the machine is so "intrinsically connected with gambling" that it constitutes a gambling device *per se*. *Id.* To answer this, a reviewing court must look to "the characteristics of the machine when read against" the elements necessary to gambling: consideration, chance, and reward.[11] *Id.* To constitute a gambling machine, the *Pinnacle* Court focused on the element of chance.[12] *See id.* The Court instructed that a reviewing court must consider "the relative amount of chance and skill present in the game; and if the element of chance predominates, the game is a gambling game." *Id.*

___

[11] The Crimes Code defines consideration associated with a related product, service, or activity, in the context of the statute, as "[m]oney or other value collected for a product, service or activity which is offered in any direct or indirect relationship to playing or participating in the simulated gambling program. The term includes consideration paid for computer time, Internet time, telephone calling cards and a sweepstakes entry." *See* 18 Pa.C.S. § 5513(f). The Pennsylvania Supreme Court has observed that tokens and prizes do not necessarily rise to the level of a reward, but that players must be able to "win an amount of equal or greater value than the amount he played in the machine." *Commonwealth v. Irwin*, 636 A.2d 1106, 1109 (Pa. 1993). The definitions of neither consideration nor reward are central to our disposition of this matter.

[12] Additionally, it should be noted that the courts have not defined "chance." Black's Law Dictionary defines "chance" as (1) "a hazard or risk," (2) "the unforeseen, uncontrollable, or unintended consequences of an act," or (3) "an accident." *Chance*, Black's Law Dictionary (11th ed. 2019).

Applying this test, the *Pinnacle* Court observed first that gameplay had elements of both skill and chance: while the initial stage of the game was random and chance-based, the latter stage included a memory game feature that allowed a player to "beat" the game every time. *See Pinnacle*, 298 A.3d at 454. The Pinnacle Court reasoned that if a player could exercise skill to obtain a winning result with every play, the game was a predominantly skill-based game. *See id.* Therefore, based upon the credited evidence, the *Pinnacle* Court concluded that the electronic gaming machines were not gambling devices *per se*. *See id.* at 455.

### 3. The POM Machines are not Gambling Devices *Per Se*

The *Pinnacle* Court's analysis is instructive.[13] Similar to the games therein, the POM machines include multiple stages of gameplay incorporating elements of both chance and skill. *See id.* at 449-50. Therefore, we consider the evidence credited by the trial court and review its legal determination that the POM machines are not gambling devices *per se* and should be returned to Appellees. *See id.* at 455.

---

[13] The Commonwealth's brief, filed more than a month after the publication of *Pinnacle*, did not cite or discuss that case. When questioned about this lapse at oral argument, the Commonwealth's attorney, Susan Affronti, Esq., stated to the Court, "First off, if we go with the statutory analysis, *Pinnacle* didn't address that point. So, that's simple, if we go in that direction. And the second point, respectfully [to the Court,] we believe *Pinnacle* was wrongly decided. And we will continue to argue that as we did in our allocator. They are substantially similar cases . . . ." The Commonwealth's opinion of the Court's analysis in *Pinnacle* aside, if the Commonwealth was aware of adverse legal authority, it was required to cite and distinguish it. *See Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1142 n.21 (Pa. Cmwlth. 2017); Pa.R.P.C. 3.3(a)(2) (stating that a lawyer shall not fail to disclose directly adverse authority). Instead, Attorney Affronti admitted that she was aware of the authority but intentionally omitted it from the arguments filed with this Court. We caution the Commonwealth that the Pennsylvania Rules of Professional Conduct require candor toward the tribunal and, specifically, the disclosure of directly adverse authority. *See Bagwell*, 155 A.3d at 1142 n.21.

The Commonwealth presented the testimony of Dan Wentsler, a BLCE officer who conducts investigations in licensed establishments related to alcohol and gambling crimes. *See* N.T.[14] at 29-30. At the hearing, Wentsler brought in one of the POM machines to demonstrate gameplay for the trial court's observation. *See id.* at 30-72.

Wentsler testified that he has participated in hundreds of investigations and inspected over a hundred gaming machines. *See id.* at 76. In the course of those inspections, he has observed approximately a hundred people playing POM machines. *See id.* at 88. In his opinion, all of those machines were gambling machines *per se*. *See id.* at 78. Wentsler also testified to the specifics of this investigation. *See id.* at 30. While undercover, he visited the Champions Bar and played the POM machines. *See id.* at 73. However, Wentsler conceded that he did not play the "Follow Me" feature on the machines. *See id.* at 103-04.

The Commonwealth also presented expert testimony from Peter Nikiper, a computer engineer and the director of technical compliance for BMM Testlabs. *See* N.T. at 141-43, 149. BMM is an accredited game testing facility and as part of his duties, Nikiper conducts gaming equipment testing and analysis. *See id.* at 143, 149. Generally, his reviews are limited to machines regulated under the Gaming Act. *See id.* at 195.

Nikiper examined the POM gaming machines, both the machines seized from Champions Bar as well as others. *See id.* at 163-65. According to Nikiper, the initial phase of the game requires "less than 50[%]" skill, but the "Follow Me" feature "take[s] skill to complete[.]" *Id.* at 212, 248. Nikiper testified

---

[14] Although the evidentiary hearing was held over the course of three days, the pages are numbered contiguously throughout.

that he could not say with 100% certainty that the games were predominantly skill. *See id.* at 268.

David Schoppe, a BLCE enforcement officer, testified on behalf of the Commonwealth. *See* N.T. at 363-443. He is part of the compliance, auditing, and gambling enforcement unit. *See id.* at 363-64. Schoppe testified that he has participated in about 100 investigations involving POM machines. *See id.* at 367.

In the course of his investigations, Schoppe has observed people playing the POM machines and also engaged in gameplay himself.[15] *See id.* at 369, 503. In Schoppe's opinion, these are games of chance because he is "not getting better at these games" despite playing them frequently. *See id.* at 462. Schoppe testified that he does not play the "Follow Me" feature because, in his opinion, most players utilize rapid play, which does not offer the "Follow Me" option. *See id.* at 463-64. Nevertheless, Schoppe agreed that "Follow Me" is determined by skill and can be won on every single play by a skillful player. *See id.* at 497-98.

Dr. Olaf Vancura, a gaming industry consultant, testified on behalf of Appellees. *See id.* at 298-321. He described the testing that he performed on the particular POM machines at issue, which included both personal play as well as the simulation of 10 million games. *See id.* at 305-16. In his expert opinion, the POM machines were predominantly games of skill. *See id.* at 304-05, 308. Specifically, Dr. Vancura opined, a skillful player can "win" by making a net profit on each and every play of the game. *See id.* at 310, 317-18. Additionally, a player that wishes to learn and improve his play on a POM machine can do so. *See id.* at 318.

Considering this evidence, the trial court made several findings and credibility determinations. The trial court did not credit the Commonwealth's

_____

[15] None of the players Schoppe witnessed playing the games testified at the evidentiary hearing. *See* N.T. at 503.

17

experts as persuasive. *See* Trial Ct. Op. at 7. Specifically, the trial court noted that the Commonwealth's investigation and Wentsler's testimony both showed case bias. *See id.* Regarding the Commonwealth's investigation, the trial court opined that the "whole approach and intent is to shut down the games regardless of game play." *See id.* The trial court also pointed to Wentsler's testimony that he had not played the "Follow Me" feature while undercover. *See id.* Additionally, the trial court expressed concern that Wentsler had conducted hundreds of investigations into the devices and had never found one to be a game of skill: to the trial court, this showed a bias towards finding the games were illegal gambling devices. *See id.* On the contrary, the trial court found Dr. Vancura's testimony persuasive. *See id.*

Finally, the trial court concluded that all of the witnesses who had testified, including the Commonwealth's expert, agreed that "a patient and skillful player could win at least 105% of the amount played on each and every play by utilizing the Follow Me feature." *See id.* at 8. Therefore, even though the puzzle portion of the game was predominantly a game of chance, the fact that the Follow Me feature could be won every time and showed up every time a player won less than 105% of the amount played eliminated the chance element. *See id.*

These findings and credibility determinations are supported by the record. We will not overturn them. *Lodge*, 283 A.3d at 925; *Clayton*, 987 A.2d at 1262. Further, based on this evidence, we discern no legal error in the trial court's determination that the POM machines are primarily games of skill and, thus, not gambling devices *per se*. *See Pinnacle*, 298 A.3d at 450-52. Finally, because the Commonwealth was unable to establish that the POM machines constitute derivative contraband, the trial court properly ordered the Commonwealth to return Appellees' property. *See id.* at 455; *Singleton*, 929 A.2d at 1227; Pa.R.Crim.P. 588(B).

18

## IV. CONCLUSION

The POM machines at issue in this case are not slot machines as commonly defined. Accordingly, these electronic games are not illegal *per se*. Further, applying the predominant factor test adopted by this Court in *Pinnacle*, these POM machines are not gambling devices *per se* and, therefore, do not constitute derivative contraband. For these reasons, the trial court's order entered March 23, 2023, and granting Appellees' petition for return of property, is affirmed.

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Three Pennsylvania Skill
Amusement Devices, One Green
Bank Bag Containing $525.00 in
U.S. Currency, and Seven Receipts

Appeal of: Commonwealth of
Pennsylvania

:
:
:
:
:
:
:
:

No. 707 C.D. 2023

## **O R D E R**

AND NOW, this 30th day of November, 2023, the order entered March 23, 2023, in the Dauphin County Court of Common Pleas granting the motion for return of property filed by Champions Sports Bar, LLC and Capital Vending, Inc., is AFFIRMED.

LORI A. DUMAS, Judge